JUDGE WILLIAMS
dissenting from the opinion of the majority of THE COURT, DELIVERED THE FOLLOWING OPINION:
Arnold having indorsed for Sandford to the Farmers’ Bank for a large amount, took a mortgage on Sandford’s undivided half interest in the Magnolia House in Covington to indemnify himself against loss.
The bank having obtained a judgment and execution against Sandford and his surety, Arnold, Sandford gave up to the sheriff to be levied on the mortgaged property, which the sheriff caused to be valued, and Wade became the purchaser at execution sale at two thirds or more of the valuation sum.
Sandford then filed his petition to redeem the property from Wade, and tendered into court the sum bid by Wade, with its accumulated interest, in United States legal tender notes.
The court having dismissed his petition, he seeks a reversal. The mortgage to the surety, Arnold, as has often been decided by this and other courts, inured to the benefit of the bank as principal.
Had Sandford given up the property to be levied by written indorsement, and had the bank, with the consent of Arnold, persisted in making the sale, Sandford would have had no right to redeem from Wade, the purchaser, according to the decisions of this court in Mercer vs. Tinsley (14 B. Mon., 274); Moore vs. Simpson (3 Met., 349). But conceding that as the surrender to the sheriff was by parol, Sandford still has the right to redeem, what are Wade’s rights as execution purchaser, and what are Sandford’s responsibilities ?
The mortgagor, Sandford, owed the bank as execution creditor a debt which he could only extinguish by paying its full amount in dollars, regarded by law as money and a *344 legal tender, this being the mortgage debt. When Wade purchased under the execution and extinguished it, he became Sandford’s creditor, and, by subrogation, entitled to all the equities and liens of the mortgage ; and Sand-ford is under precisely the same responsibilities to him as were created by the mortgage, judgment, and execution, and he could acquire no new equity against Wade which he did not possess against the bank; and therefore he can discharge the same debt now held by Wade only in the same legal currency which he could legally have forced the bank to take.
His legal responsibility to Wade grows out of the payment of the execution and mortgage debt to the bank by Wade ; and it matters not to him when, how, or in what manner Wade discharged this debt.
He can no more inquire into whether Wade paid one kind of currency or another, or whether he substituted his own note to the bank, or whether he paid it in cattle, cash, notes, or land, and if in these, whether at a high or low price, than could an obligor in a note inquire at what price and for what consideration an assignee may have purchased the note of the assignor, and avail himself of the benefit of the assignee’s purchase by way of reducing the amount of the note. Wade, by his purchase, paid the debt of Sandford to the bank, and thereby obtained the rights of the bank to the debt, and is entitled to be repaid in just such currency as the law would have required him to pay on the execution. Had Wade paid the bank a house and lot, could Sandford inquire into the real value of these, and reduce his liability thereby ? or could he have required Wade to receive from him a house and lot, either of these would be just as legal and reasonable as to inquire into what kind of currency Wade paid the bank.
*345 The case of Stapp vs. Phelps (7 Dana, 300) has nothing to do with this case. That case was a contest between the mortgagor and mortgagee in equity, and the whole principle is stated by the response of the court as follows: “ It is competent to impeach, by parol proof, any deed, bond, bill, or other instrument, however absolute on its face, given to secure a usurious loan of money.” And it has always been held in this State, that, as between mortgagor and mortgagee, the consideration may be inquired into to ascertain whether a usurious loan was attempted under a denial of consideration or otherwise; and if the real consideration be a loan of depreciated currency, it will be deemed usurious, and its real value only decreed.
But in this case no contest as to the amount or value of the original debt to the bank is or can be raised, because that debt had been adjudicated and an execution thereon levied on the property, and it sold by virtue thereof, and it is now too late for Sandford to impeach it.
It is therefore clear, that as a majority of this court, in Griswold vs. Hepburn (2 Duvall), held that the act of Congress making said treasury notes a legal tender was unconstitutional, and that nothing but gold and silver coin could be made a legal tender or money, that, until that case shall be reversed by the supreme court of the United States, or overruled by a majority of this court, the execution creditor nor the execution purchaser can be compelled to receive anything in discharge of this debt not a legal tender and by law money.
And although I dissented from the opinion of the majority of the court in that case, and believe that said act of Congress is constitutional, and that said treasury notes are a legal tender, and that the supreme court of the United States will so adjudge, and will reverse said case, *346 yet, until this is done, or this court shall overrule said cause, Wade, no. more than any other creditor, can be compelled to receive them. Section 1, article 15, chapter 36, 1 Stanton’s Revised Statutes, 488, provides, that when the defendant in an execution shall have owned the legal title to any real or personal estate, and has created a bona fide encumbrance thereon before an execution has created a lien on the same, the interest of the defendant in such property may be levied on and sold, subject to the encumbrance, and that “ the purchaser at the sale shall acquire a lien on such property for the purchase money, and interest after the rate of ten per centum per annum from the day of sale until paid, subject to the prior encumbrances.” Now it is most manifest that this sale, under the bank’s execution, was not the sale provided in this statute, because it was not an attempt to sell the mortgagor’s interest in the property subject to the mortgage encumbrance, but was a sale of the property to extinguish the mortgage debt.
The reason why Sandford may now redeem is, that the property was not leviable to pay the mortgage debt, as has often been decided by this court; and having done nothing which the law regards as an estoppel, he still has the right to redeem.
The case provided for in the statute is when the execution may legally be levied on the defendant’s interest and sold, subject to the prior encumbrance, not to extinyuish it; and the purchaser holds his lien subject to the prior encumbrance, and not the title, by reason of its extinguishment.
In a purchase under execution, as provided in the statute, the purchaser acquires a legal right thereby, and a legal lien, with a right to demand ten per cent, per annum interest; this is not the lien that Wade acquired by the execution sale to extinguish the mortgage debt; but he, *347 by subrogation, acquired the lien of the execution creditor who held the mortgage debt; he having paid the debt, becomes invested with the rights and equities of its former holder, and is entitled to all the rights and equities under the mortgage, judgment, and execution not extinguished by the execution sale, but nothing more; therefore, he is not entitled to ten per cent, per annum interest.
Sandford has the right to redeem by paying the execution creditor his debt in that kind of currency which the law would have compelled the execution creditor to receive ; or, he has a right to demand a foreclosure of the mortgage and a sale of a sufficiency of the mortgaged property to pay this debt and thereby relieve the remainder, if any, from the encumbrance; and his prayer for general relief should have been granted; therefore, the judgment dismissing his petition was erroneous, and should be reversed.